UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TJYMAS BLACKMORE,

       Plaintiff,

v.

DEPUTY W. MISNER, et al.,

       Defendants.
_____/

File No.  1:02-CV-332

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This matter comes before the Court on Plaintiff Tymas Blackmore's motion for attorney fees pursuant to 42 U.S.C. § 1988 following a jury award of damages in favor of Plaintiff and against Defendant Jason Pardee for the violation of Plaintiff's civil rights.

Plaintiff filed this action against the County of Kalamazoo, Sheriff Edmonds, and 23 deputies and officers, alleging that the individual deputies and officers were deliberately indifferent to his serious medical needs by failing to provide medical attention for his appendicitis while he was an inmate for two days at the Kalamazoo County Jail and that the Sheriff and the County were liable for failure to train. Plaintiff successfully appealed the entry of summary judgment in favor of the Defendants. The case was remanded and was tried to a jury. At the conclusion of the trial Plaintiff received a verdict against one Defendant, Deputy Jason Pardee, and was awarded compensatory damages in the amount of $50,000.00. Plaintiff seeks attorney fees in the amount of $129,611.00, which includes

$120,436.00 in fees for the law firm of Plunkett & Cooney, and $9,175.00 in fees for the law firm of Bendure & Thomas.

### I.

Where a plaintiff prevails in a civil rights action under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988. "Although 'may allow' has a permissive ring to it, the Supreme Court has read [Section 1988] as mandatory where the plaintiff prevails and special circumstances are absent." *Deja Vu of Nashville, Inc. v. Metro Gov't of Nashville*, 421 F.3d 417, 420 (6th Cir. 2005) (citing *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989)).

To be a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Granzier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). There is no dispute in this case that Plaintiff was a "prevailing party" and is entitled to the recovery of reasonable attorney fees. The issue for this Court is to determine what amount is reasonable.

"The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). In *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Supreme Court determined that the most useful starting point for

determining the amount of a reasonable fee is the "lodestar" approach – the number of hours reasonably expended multiplied by a reasonable hourly rate.

> The reasonableness of the hours and rate is determined by considering twelve factors:
>
> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005) (quoting *Reed*, 179 F.3d at 471-72 n. 3).

It is the burden of the attorney seeking compensation to provide "evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. Courts are required to examine the claimed hours and exclude those hours that were not "reasonably expended." *Id.* at 434. Thus, the attorney seeking compensation also has the burden of documenting the number of hours spent on the case and of maintaining records in a way that would allow a court to determine how much time was spent on each claim." *Moore v. Freeman*, 355 F.3d 558, 566 (6th Cir. 2004) (citing *Hensley*, 461 U.S. at 437).

Plaintiff has submitted a thirty-two page billing statement from Plunkett & Cooney and a three page billing statement from Bendure & Thomas outlining the hours each attorney expended and the tasks performed on the litigation. Ex. 1 & 2 (Docket # 106). Counsel has

included affidavits from seven of the twelve attorneys whose time is reflected on the billing statements attesting that the billing statement accurately reflects time for services they actually and necessarily spent.  Ex. 3-9.  Plaintiff has not submitted affidavits for the other five attorneys. Neither has Plaintiff offered any other supporting documentation regarding these five attorneys.  Because it is the applicant's burden to prove the number of hours reasonably expended and the rates claimed, and because Plaintiff has not met this burden, the Court will exclude the hours attributable to the five attorneys for whom no affidavit has been submitted.[1]

Defendant contends that the requested fee is excessive because customary fees of personal-injury cases are usually on a contingent basis of 33% of the judgement collected, and Plaintiff's attorney has submitted a bill for 260% of the judgment.  Defendant's contention is without merit. The lodestar approach is the "centerpiece" of attorney's fee awards, and the Supreme Court has never suggested that a different approach is to be followed in cases were the prevailing party has executed a contingent-fee agreement. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).  *See also Fuhr v. School Dist. of City of Hazel Park,* 364 F.3d 753, 762 (6th Cir. 2004) (rejecting comparison of fee award to contingency fee agreement in Title VII case).

---

[1] The five attorneys for whom no affidavit has been submitted are Joseph G. Lujan, Camille Horne, George Netschke, Kristen Tolan, and Marc Amos.  Plaintiff has not submitted an affidavit for Kim Nowosad, but because Defendant has specifically stated that he does not object to the time or rate of Kim Nowosad, his hours will not be excluded. (Def. Br. at 8 n.1).

Defendant also contends that because Plaintiff's claim arises out of his status as a prisoner in a county jail, 42 U.S.C. § 1997e(d) limits his recovery of attorney fees to rates which are no greater than "150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). By its terms this limitation on fees found in the Prison Litigation Reform Act of 1995 applies only to an action "brought by a prisoner who **is** confined to any jail, prison, or other corrective facility." 42 U.S.C. § 1997e(d)(1) (emphasis added). The term "prisoner" is defined in the act as "any person incarcerated or detained in any facility." 42 U.S.C. § 1997e(h). The language of the statute clearly refers to present incarceration rather than previous incarceration. Because Plaintiff was not incarcerated at the time he filed this action, he is not a "prisoner" to whom the fee limitation of § 1997e would apply. *Accord*, *Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998) ("Because Doe was not a prisoner when he filed this case, we find that the provisions of the PLRA are inapplicable."); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998) ("The statutory language does not leave wriggle room; a convict out on parole is not a "person incarcerated or detained in any facility . . . .").

Defendant has also objected to certain entries in the billing statements as being duplicative, unnecessary, and excessive. The Court agrees that some of the billing is duplicative, unnecessary, excessive, or inadequately documented. *See In re Samuel R. Pierce, Jr.*, 190 F.3d 586, 594 (D.C. Cir. 1999) ("Inadequate documentation 'makes it impossible for the court to verify the reasonableness of the billings, either as to the necessity

5

of the particular service or the amount of time expended on a given task.'") (quoting *In re Sealed Case*, 890 F.2d 451, 455 (D.C. Cir. 1989)).

For example, between March 18, 2005 and April 3, 2005, the billing statement contains eight entries by Mr. Callahan in blocks of 4.2 to 7.6 hours for a total of 43.4 hours to review and analyze the file, deposition transcripts, documents and records. These entries are vague and excessive for the nature of this case. These trial preparation hours will be reduced by half.

The billing statement also reveals some duplication of effort. For example, both Mr. Stuart and Mr. Callahan billed for activities related to planning and preparing for trial. Mr. Stuart, however, did not participate in the trial, and this was not such a complicated trial that would necessitate two attorneys' preparation time. The Court will accordingly reduce Mr. Stuart's hours by 5 hours. The billing statement also includes 32.1 hours for Rachel Foster's attendance at trial. Ms. Foster did not participate in the trial and this case did not require the attendance of two attorneys at trial. The billing statement also includes 4.2 hours of research by Ms. Foster on whether lack of adequate funding is a defense to failure to provide medical care/treatment to a pretrial detainee. This was not an issue at trial. Accordingly, Ms. Foster's hours will be reduced by 36.3 hours.

The next step in calculating a reasonable attorney fee is to determine a reasonable hourly rate. The proper hourly billing rate is the fair market rate in the relevant community. *Amer. United for Separation of Church and State v. Sch. Dist. of Grand Rapids*, 717 F. Supp.

488, 495 (W.D. Mich. 1989) (Enslen, J.); *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community."). "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n. 11.

Plaintiff has requested the following hourly rates: Mr. Brochert: $275/hour; Mr. Bendure: $250/hour; Mr. Callahan: $250/hour; Mr. Stuart: $220/hour; Mr. Stapleton: $190/hour; Ms. Foster: $180/hour; Mr. Olson: $170/hour. Each of the affidavits outlines the attorney's education and years of experience and recites that the requested fee is the reasonable hourly rate based upon the Michigan State Bar Economic Survey of the Practice of Law in 2003.

The customary billing rate is the proper starting point for calculating fees. *Kelley v. Metro. County Bd. of Educ.*, 773 F.2d 677, 683 (6th Cir. 1985) (en banc); *Americans United for Separation of Church and State*, 717 F. Supp. at 495. Plaintiff has submitted no information on the customary billing rate of any of the attorneys other than Mr. Bendure.

This Court's review of the 2003 *Economics of Law Practice* survey issued by the State Bar of Michigan reveals that the requested rates are higher than the average rates charged by attorneys with similar years in practice. The years of service of the attorneys are as follows: Mr. Brochert: 37 years; Mr. Bendure: 29 years; Mr. Callahan: 14; Mr. Stuart: 24;

Mr. Stapleton: 11; Ms. Foster: 7; Mr. Olson: 3. According to the survey, the average and the 95th percentile hourly billing rates for attorneys based on years in practice is as follows: thirty to thirty nine years – $180 and $280; twenty to twenty nine years – $188 and $290; fifteen to nineteen years – $190 and $335;  ten to fourteen years – $170 and $278; five to nine years $168 and $250; four years or less – $149 and $300.  2003 *Economics of Law Practice* at 25.  The survey also reports that the average and the 95th percentile hourly billing rate for Grand Rapids attorneys are $177 and $274.  *Id.* at 26.

The Court has reviewed the rates requested against the twelve factors outlined in *Isabel*, 404 F.3d at 415.  It appears that this case involved some difficult legal issues early on which were resolved on appeal.  The trial itself was relatively routine and did not call for a high degree of legal skill or effort.  In light of these considerations and the level of experience and ability of the attorneys, the Court will apply the following hourly rates: Brochert: $250/hour; Bendure $250/hour; Callahan $210/hour; Stuart $220/hour; Stapleton $180/hour; Foster: $170/hour; Olson: $150/hour.

Based upon the Court's adjustments thus far, the straight lodestar amount is $92,382.50.  Defendant, however, has requested that Plaintiff's attorney fees be further reduced because Plaintiff failed to prevail against most of the Defendants on most of the theories and allegations.

The lodestar may be adjusted downward based upon the results obtained. *Hensley*, 461 U.S. at 434. "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.*

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants – often an institution and its officers, as in this case – counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved."

*Id.* at 434-35 (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (CD Cal. 1974)). *See also Riley v. Kurtz* 361 F.3d 906, 916 (6th Cir. 2004) ("work on claims unrelated to the claims upon which the plaintiff prevailed should not be compensated.").

Although Plaintiff was only successful on his claim against one defendant, Plaintiff seeks recovery of all of the attorney fees incurred because he contends that his claims against all of the Defendants had the same common core of facts and legal issues.

Insofar as Plaintiff contends that his claims against Pardee were not easily severable from his claims against the other individual officers, the Court is in agreement. *See Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 278 (1st Cir. 2000) (holding that court was justified in refusing to differentiate between claims brought against each of four officers alleged to have been involved in the beating of the decedent). However, Plaintiff also sued the County and the Sheriff. The Court granted Defendants' Rule 50 motion in part and dismissed Plaintiff's claims against the County and the Sheriff on the basis that the evidence

9

did not support Plaintiff's failure to train claim. (Docket # 103). As noted in *Figueroa-Torres*:

> [W]hile the claims against the officers can clearly be said to have arisen out of a "common core of facts" or to have been "based on related legal theories," thus justifying their aggregation in determining the appropriate amount of attorney's fees awarded, the same is not so for those claims alleging supervisory liability. While it is true that the claims all stemmed from a common incident – the alleged mistreatment of the deceased – it does not follow that the claims cannot be severed. Whatever common elements there may be between the claims, it is indisputable that the facts that would have to be proved to prevail against the arresting officers, as well as the legal theories that would serve as a foundation for the claims alleging direct participation in the arrest and mistreatment, are wholly different than those relating to supervisory liability.

232 F.3d at 278-79. In *Figueroa-Torres* the court held that because the unsuccessful supervisory liability claims were based on different facts and legal theories than the successful excessive force claims, and were thus severable, the district court abused its discretion in awarding attorney's fees stemming from them. *Id.* at 279. The court accordingly remanded for a determination of what portion of plaintiffs' lawyer's time was spent in furtherance of the unsuccessful supervisory liability claims and directed the district court to deduct that time from the fee award. *Id.*

Similarly, the Court finds that Plaintiff's failure to train claim against the County and the Sheriff were based on different facts and legal theories and are severable from his deliberate indifference claim against the officers. Accordingly, because Plaintiff did not prevail on his failure to train claim, a downward adjustment to reflect this lack of success is appropriate.

10

Plaintiff's billing statement does not delineate the time attributable to preparing and trying the failure to train claim as opposed to the deliberate indifference to medical needs claim. The Court must accordingly fall back on its own resources and base its determination on its reasoned judgment. Based upon this Court's experience in prior cases, the Court finds that a downward adjustment of 20% to reflect the failure to prevail on the failure to train claim is appropriate.

Applying the 20% reduction to the lodestart amount of $92,382.50, the Court arrives at a total attorney fee award of $73,906.00. Accordingly, the Court will award Plaintiff attorney fees in the amount of $73,906.00.

An order consistent with this opinion will be entered.


Date:   October 20, 2005             /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE